The lawyers who are going to argue before the court, please introduce yourself to the court. Do you want to reserve some time for rebuttal? Okay. All right. Let's proceed. Justice Lampkin is not here today. She's ill, but she'll listen to the recordings of this. Sure. And participate in the decision-making process. Okay. Thank you, Your Honor. So, Your Honor, first of all, I'd like to talk about the misleading grand jury testimony. Officer Watkins said that after Cross forced the complaining witness out of the house, she, quote, got into the offender's vehicle hoping he would drop her off. The only way to read this statement is a voluntary act at some level. It's not hoping he wouldn't hurt her, hoping she would escape, hoping he would do something for her. But the grand jury testimony allowed only one conclusion. There was nothing voluntary going on at all. Did your investigation reveal that Kerwin Cross, that took CC by the knife, threw a vehicle at her and Cross drove her away? Yes. So is it your position because of this testimony the grand jury would not have indicted him but for that testimony? Well, kidnapping would have indicted other offenses, no doubt, but not of kidnapping. Because kidnapping requires that someone be carried away by force against that person. The grand jury would not have indicted on a charge of kidnapping under the facts of this case. That's your position? That's our position because there was nothing showing she was forced. Without that, there was nothing showing she was forced into the car against her will. Okay. And how often do you think the grand jury doesn't return an indictment on a charge with facts like this? I think rarely, but I think when you ask the question. Ever? Ever. I guess when you ask the question, I guess I would say my answer, you have to answer it theoretically. You can't answer it practically. Because if you answer it practically, you know, all the case law I talked about, Oliver, is all out the window because as a practical matter, you know, they get into a pattern and they do whatever. So I think when I say, you know, but for as a theoretical matter when you're deciding probable cause, they would not have been able to decide probable cause, you know, unless they were not deciding probable cause, unless it was just rubber stamping. If they're rubber stamping, the answer is yes, they would have. If they were deciding probable cause, the answer is no. Okay. So now the state calls the report some kind of oversight or unartful drafting. They try to sort of walk away from the report. But the report changed the whole meaning of the story. There's nothing about any knife being used outside, and the report's only reasonable inference is that he forced her into the car. Because the report and the testimony made no sense together, the latter was misleading. And because the misleading testimony was what provided probable cause for kidnapping, it pressured his cross. A grand jury is secret. Where there's no sunshine, it's always tempting to card corners. And this court should vacate Cross's kidnapping count. So unless there are questions, I'll move to the second issue, which is the presumption of innocence. Counsel, can you make sure? Sure. And it's the very last issue, so I want to make sure that we don't miss the sentencing issue. All right. And whether they incorrectly used the EDU-UW charge on the admission. Yeah, well, I think there's no question that they didn't, because under the Appellate McFadden decision, which was the law at the time, and under ENERGY, which is the law now, an angular count is void, which means it's never existed. And if it's never existed, you can't use it for impeachment. Okay. What about the Supreme Court's precedent on the retroactivity versus prospective analysis? Does that change it at all? Because at the time the EDU-UW was in place, it was a valid conviction. No, I would disagree. At the time, it was an invalid conviction under the Appellate McFadden decision, and the trial court was bound to follow Appellate McFadden. So I don't think there was anything valid about it at the time. Okay. So that's my position on that. So as far as the presumption of innocence, Your Honor, the one thing the State concedes is that the judge, in terms of Zeres, who failed to ensure that the jurors understood the presumption of innocence, and that failure was especially prejudicial here as the State undermined the presumption. First, before mentioning any evidence at all, the prosecutors had told the jury, you are sitting in the company of a rapist. But as the jury had to decide what Klaus did, and only after hearing the evidence, and the prosecutors' words weren't just argumentative, and they weren't just repetitive, the opening statement used the phrase rape or rapist six times. They announced the results before discussing the evidence, and because they said you were sitting, they may also have frightened the jury. That's the first reason the judge's failure to protect the presumption of innocence was especially prejudicial. The second reason was the State's argumentative questioning. When questioning Klaus, the prosecutor said, now let's talk about the last girl you raped. That statement of Klaus was not a question. It had no basis being stated in Klaus's examination. Even though the judge sustained the objection, it signaled to the jury that Klaus's guilt was already established. It further undermined the presumption. Third, the State undermined the presumption by demonizing Klaus and his dog. It told the jury, when asked what dog he owned, you just knew he was going to say pit bull. There was no reason for that at all, of course, and the State linked Klaus to a violent subculture, to a vicious canine breed, and to vicious people who own them, once again highlighting the importance of the judge's failure to assure that the jury understood the presumption. Further, the prosecutor undermined the presumption in closing argument, using the term rape or rapist eight times, six in the first two pages, and telling the jury, look at him now. He's still sitting here smug. He still thinks he's going to get away with it. What could corrode the presumption of innocence more than telling the jury that Klaus, sitting in the witness chair, knows he's guilty? His thoughts weren't evidence, and by imagining Klaus's thoughts, the prosecutor further undermined the presumption. Finally, the State also undermined the presumption with its impeachment. It impeached Klaus with his prior weapons conviction. But, again, as the State does not dispute, both the impeaching gun conviction and his predicate gun conviction were void under Aguilar. Under the prevailing jurisprudence at the time, the Appellate McFadden decision, the judge was bound to follow McFadden, and this should never come in as impeachment. The convictions prejudice Klaus for several reasons. First of all, they prejudice because it's other crimes of impeachment. Everybody knows how prejudicial that is, which is why most defendants don't testify. And especially prejudice Klaus because the bio-felon language encouraged the jury to speculate what the prior felony might be, and since they were hearing about sex crimes, it encouraged the jury to speculate about that. So, finally, we would argue that this Court should address some of the errors of the preserve, but many were not, and we would ask that all of it be considered humbly as plain error for a couple of reasons. First, this was a clash of two stories. Second, it was second-rung plain error because the State piled on in so many ways, sitting in the company of a rapist, asking about the last girl you raped, sitting here smug, the dog thing, and a proper impeachment, all on top of the judge's failure to assure that the jurors understood the presumption. So this isn't a technicality. It's not a foundation issue. It's not one or two straight comments. It's an attack on the presumption of innocence, which is so central to our system, that to attack it is to attack its integrity. Yes. Are you saying that when a lawyer says he's sitting there snug? Smug. Smug. Smug. Yeah. That that's a – that that takes something away from the presumption of innocence? Yeah, well, it's not just he's sitting there smug, but he's – What does that mean? The jury can see if he's – you know, if he's smug or he's not smug. Well, first of all – I answer two things. First of all, it's not just that he's smug. It's that he still thinks he's going to get away with it, so it's going into his thought process. Second, smug – I mean, what does smug mean? Smug just means that you're acting like you're in the right when you're in the wrong. I mean, I don't know what else smug means. So you're acting – so I think smug means you're acting innocent when you're in fact guilty, is what the prosecutor is trying to say. Well, doesn't the jury consider the demeanor of a witness – Only when testifying, Your Honor. I cite cases, and I can come back and rebuttal. I can give you the names of those cases. But only when the witness is testifying may the jury consider the demeanor. When the witness is sitting in the defendant – in the seat, he or she is not – she is not in the exhibit. She is not testifying. And, no, that is not – the demeanor is not relevant. But even if it is relevant, it doesn't mean that the prosecutor can put that spin on it. It doesn't mean it can say – you know, the jury – I mean, as a factual matter, the jury is – But you have a case that says that that's reversible error. I have a case that say – I have a case that say it's error. What's reversible error is all these things taken together that – I mean, any one of these things, except for maybe the opening statement, is probably not reversible error in and of itself. It's a continued attack on the presumption. It's like People v. Blue or People v. Johnson where you have the piling on and that creates reversible error and second-pronged plain error. But I would also say, you know, the jury may have been looking at him. And, of course, you know, nothing is stopping them from drawing their own conclusions. But that doesn't mean the State can encourage that. For example, a jury can engage in jury nullification. They can just say, you know, they proved the charges. They did it all. We like the guy. We're letting him go. That's accepted as a reality. It doesn't mean the defense counsel is allowed to ask for jury nullifications. That objection will get sustained every time. So it's the same thing. What the jury may have done doesn't mean the prosecutor is allowed to say that, in his head, he's thinking he's guilty right now. That's my answer to that question, if it helps. Do you think this was a closely balanced case? It was a closely balanced case because it was two sides telling opposite stories. There were no ñ But they weren't opposite. In fact, most of the details were the same for each and every one of them. Right. The only issue was whether they consented or not. Right. So in that sense, they were clashing stories. And there was ñ Well, it's a classic story. Clashing, clashing. And you had three of them. And then ñ That is certainly true. And there is circumstantial evidence ñ There is circumstantial evidence in support of the State. But ñ and, again, I'll give you the names of the cases I repuddle. But, I mean, there are cases ñ you know, there are ñ Just because there's circumstantial evidence in support of the State doesn't ñ You know, closely balanced doesn't mean anechopoise. I mean, there's one case where there were four ñ where the State had four witnesses and the defense staff one. There was another one who just went and had a confession. And it doesn't mean that the case wasn't closely balanced. If there's two plausible stories ñ And a 15-year-old can't consent. What? A 15-year-old can't consent. Well, there's two, Your Honor. So in that sense, it would be ñ in that sense, there is overwhelming evidence of aggravated criminal sexual abuse because having sex with an underage girl that cannot consent is classed to aggravated criminal sexual abuse. And so I would agree that certainly there's overwhelming evidence of that because it was not disputed of what her age was. But I think ñ but the charge would be aggravated criminal sexual assault and the age is not ñ the age is not relevant to the greater charge. So ñ but we're also not arguing ñ we're not ñ the first point I'm claiming here, we're also arguing the second point I'm claiming here, because it's not one, it's not two, it's not three things. It's so many things that undermine the presumption, and the presumption is so central to the presumption of innocence, to our system of government, that it undermines the integrity of the judicial system. And even someone who is guilty isn't held to a fair trial, and the prosecutor ñ and Ms. Condor was so great here in the evidence that this Court should reverse under second prong claim error as well. So unless there are other questions, I would ask this Court to grant a new trial with the lesser relief we had requested. Good morning again, Your Honors. Assistant State's Attorney Alan Spelberg on behalf of the people. I'd like to begin with your question, Justice Berk, that you had asked regarding the issue of the impeachment by the prior conviction. And I want to first acknowledge an error in our brief, which was pointed out in the defendant's reply brief. As we state on page 59 of our brief, we assert that the prior conviction was never raised by the prosecutor in closing argument as a basis for considering the defendant's credibility. As counsel points out in his reply brief, the attorney did actually point out that the defendant's prior conviction for unlawful use of a weapon by a felon should be considered by the jury as an indication of credibility. So I apologize for the error, and I acknowledge it, but that doesn't mean that the defendant's rights were violated to such a degree that he is entitled to a new trial. And the question here on that issue, if I could begin with that issue, is was the trial court's ruling authorizing impeachment by prior conviction with his prior UUW by a felon conviction an abuse of discretion at the time that it was made? And at the time that it was made, the case law indicated that, contrary to what counsel says, that a prior felony, a UUW by a felon, is not improper to allow for consideration for impeachment, even if it does indicate the defendant had previously been convicted as a felon. I get you on that one. But what about the use of that later determined invalid conviction for sentencing, for aggravation and sentencing? That's where I have a problem. Well, Your Honor, we acknowledge in our brief, as you know, that it was under NG, the conviction for both the UUW by a felon and the earlier UUW is void, is found by NG in the Supreme Court. We assert that it was improper to be considered for purposes of aggravation, but it didn't have any effect on the trial court's determination of sentence in this case. He makes no mention of that particular prior conviction at the time of sentencing. Instead, my recollection of the trial court's findings at sentencing is that he was focused upon the facts of the case, the facts of the other crimes cases, and the types of conduct for which the defendant was being punished. It was not based upon his criminal history. But it was presented by the state as aggravation. Yes, it was, Your Honor. We acknowledge that under NG, it could not be considered for that purpose because of the void nature of it. And today, knowing that UUW felon was improper based upon the earlier UUW, which fell under the EGWLAR, we would not be seeking to use that for impeachment purposes either. But at the time of this trial, long before NG came down, long before the Illinois Supreme Court's decision in McFadden came down, there was no case that specifically said or that even indicated that it would be improper to utilize a UUW by a felon for purposes of impeachment or even for aggravation unless the defendant had vacated the earlier convictions already. And I know counsel talks about the appellate court's decision in McFadden, but McFadden was quite different. McFadden was a direct appeal of a conviction for a UUW by a felon. And what the appellate court held was that because the underlying EGUW, which was an element of the UUW by a felon conviction in that case, because the earlier EGUW was void under EGWLAR, the State could not meet their burden of proving the UUW felon in this case. Mr. Spaulding, don't you think when we have precedents saying that those convictions are invalid, that it somewhat taints the entire sentencing procedure? I agree that I think you could probably use that for impeachment at the time. But for sentencing, wouldn't it be more prudent to say, yes, he should be resentenced and we will not consider those convictions in sentencing him, especially when you're looking at a sentence that has a significant jail time attached? Your Honor, I don't disagree with that point. And as I said, we agree and acknowledge that it was improperly offered for aggravation. The question that we are proposing to the court is, what is the remedy for that? And the remedy typically, when a court hears improper aggravation, is to examine the record and determine whether or not the improper information had an effect on the outcome of the proceeding, had an effect on the sentence itself. And it's our position that, based upon the record here, it did not. If this court disagrees, obviously that's the decision that it makes, and we would have no quarrel with that in that regard. But the reading of the record that we've made is that the existence of this prior improper aggravation – and I admit it's improper aggravation – did not have any effect on the outcome of the sentence itself. What do you think about the opening statement? Let's talk about that. Standing here today as an appellate lawyer, I absolutely wish that statement had not been made. It is a startling statement to read from the outset. It is a dramatic flourish that I don't believe was necessary. The question, however, before the Court is, does it amount to plain error? Is it such a clear and obvious error? And I'm not sure that the Defendant can reach that point at this point, because, one, the case law that existed prior to today, or even from today, is that it does recognize that prosecutors are allowed to be interesting in their opening statements, make assertions. Wow. I've never heard that one. I'm going to use that one now. And that they are allowed to – sometimes one court, as we said in our brief, has even recognized that you can refer to a Defendant as an executioner, that that didn't amount to an error, that that wasn't improper. And so certainly this gets to the line. It may even possibly go over the line. I'm not going to say otherwise. But I don't believe it amounts to the clear and obvious error that the Defendant has to establish under purposes of plain error. And the reason why is because the jury, even before that statement was made, even though it was at the very beginning of the opening statement, the jury was told that the Defendant was charged with multiple counts of aggravated criminal sexual assault and aggravated kidnapping, and was told that there was sexual penetration going between the Defendant's penis and the victim's body. And so, therefore, the jury knew that this was a rape. There was no question that they learned that this was a rape. And so being told that the Defendant is a rapist, while certainly, again, I wish it hadn't been said, wasn't something that was outside the understanding of the jury, even at that moment. It never really changed that, because as we established throughout the entire trial, the evidence showed that the Defendant was a rapist. He repeatedly raped the victim in this case. He repeatedly raped the victims in the two prior other crimes evidence cases. There's nothing that you can draw from that evidence other than the conclusion the Defendant is a rapist. I would add on top of that, and how the Defendant cannot establish his clear and obvious error that he's required to, is that the judge did instruct the jury before the opening statements and at the end of the trial that opening statements aren't evidence and to not consider them in that regard. And so accepting that aspect of the instructions, accepting the entire case, accepting the strength of the evidence, the overwhelming strength of the evidence, which even with the Defendant's testimony claiming consent, was impeached and contradicted by the overwhelming evidence of the victims in this case, the DNA evidence that connected to the Defendant to the victim in this case. And so he cannot reach his point of plain error, which is his burden at this point. As to the claim regarding the grand jury, as the trial court found, at most it's a misstatement of words that's happening here. It is not a purposeful attempt to mislead. And if you look at the statements that were made, and we quote them explicitly on our brief on page 24, the questions that were asked of the detective and the grand jury were entirely consistent with the report that was issued because the questions that were asked were, was there a knife that was being utilized against the victim and was she brought to the car? And that's what the report says. Yes, the report does say that she got into the car hoping that he would drop her off, but that's what her mindset was. That's what she said. It doesn't in any way negate the fact that the Defendant had a knife, forced her out of the house and into a car. And so the trial court's ruling was correct on that when he denied the motion to dismiss the aggravated kidnapping charges. In regards to the other aspects about the presumption of innocence, the Defendant has created an amalgam of arguments, whether it's going through the 431B's error issues or going through the closing arguments or going through the statements, and none of it really matches up. Starting with the zero-issue brief, we acknowledge in the supplemental brief that the trial court asked the jury if they agreed with and accepted the four zero principles, all of which were properly identified, including the presumption of innocence. And so the error that occurred was the court didn't say accept and understand. It's a very minor distinction for the jury after hearing what those four were, and the Defendant would have to show that that amounted to plain error in this case. In terms of the statements that were made in the closing arguments or in the questioning, the questioning was all valid, and the only time that there was an objection which was sustained, which counsel is correct, was when they asked the Defendant and stated, let's talk about the other rapes. That was improper, and the court immediately sustained the objection and instructed the jury to disregard it. And so we know that the court was active, we know the trial attorneys were active, and that it was properly taken care of to ensure the Defendant had a fair trial, and that's what happened in this case. And then finally, in terms of the statement regarding the Defendant is sitting there smugly, the Defendant testified in this case. He put his demeanor into evidence. He asked the jury to consider his truthfulness and credibility. We are allowed to comment on his credibility and his demeanor in the exact same way as we are any other witness. Now, I know counsel says that he has a case. The case that he cites is a case called Purdy v. People. It's in his opening brief. It is an 1892 decision from the Illinois Supreme Court. And the reason why I stress that length of time is because that's the best case that he could find. But more importantly, in Purdy, Purdy ruled that it was improper for the court to instruct the jury to consider his demeanor while sitting at the table. An instruction from the courts to the jury as to how they should consider his demeanor. Not an argument by the parties as to how they should accept his credibility and demeanor. It's not the same situation here. And so for this reason, and for all the reasons we've stated in that brief, we believe that the Defendant in this case did have a fair trial, that his conviction should be affirmed. The trial court's ruling regarding the denial of the motion to dismiss the Arrogant Kidding account should be affirmed. And that while we assert that the sentence was valid in light of all the evidence, if this Court were to disagree and remand for resentencing, we would understand  Thank you, Your Honor. Good morning, Your Honor. So, again, there's about three quick points. So first, I think I understood Counselor saying, and I may have been mistaken, that he feels that the judge did not consider the aggravation of the sentencing. We would disagree because the wording he used was he considered an aggravation of my client's criminal record. Now, when we say criminal record, that is not, I think, a reference to the propensity of retinaces. That would be, you know, his prior things that he did in his life. Criminal record refers to his prior convictions. I think that's the only way to read that. And his only prior convictions were the Aguirrela violations. So I think, so, I mean, so on that level, I think that's pretty clear. The second point I would make is that they said that the prosecutors initial comment wasn't prejudicial because the jury knew that it was a rape. Well, no, the jury knew he was charged with a rape. The jury, they told what the charges were, and they told that the charges were not evidence. I think that's very different from the prosecutor getting up and telling the jury not only what my client did but what my client is before mentioning the evidence. And finally, as far as the state says that my only issue as far as the demeanor is purdy. And that's not true. We also say people be false, which is a 1990 case, noting that when a defendant's demeanor, except while testifying, is not evidence. So certainly they consider my client's credibility. Certainly they consider how my client looked on the stand. But they cannot consider his demeanor while not on the stand. And they certainly cannot tell the jury what thoughts are in his head as he is sitting in the witness stand. So for those reasons, also, I would ask that this Court grant a new trial or the lesser relief we've asked. Thank you. Well, thank you for giving us a very interesting case. It had many, many issues to the side here. And the briefs were very well done and the arguments were excellent. And we'll take the case under advisement and have an order opinion for you shortly. The Court is adjourned.